☑ Original ☐ Du **CLERK'S OFFICE**



A TRUE COPY
Oct 27, 2025
SMDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No. **25-M-593 (SCD)** |
| Records and information associated with the cellular device assigned call number (414) 364-0103 (the "SUBJECT ACCOUNT"), whose service provider is AT&T, and whose suspected user is JASPREET SINGH | ) ) ) ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____

*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    11-10-25    *(not to exceed 14 days)*
   ☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Stephen C. Dries    .
                                              *(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for __30__ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    10-27-25. 10:45 am          *Stephen C. Dries*
                                                       *Judge's signature*

City and state:    Milwaukee, WI            Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                               *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## Property to Be Searched

Records and information associated with the cellular device assigned call number (414) 364-0103 (the "SUBJECT ACCOUNT"), whose service provider is AT&T (the "Provider" or "Service Provider"), and whose suspected user is JASPREET SINGH.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A.

a. The following information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period time period January 1, 2025, to the date of this warrant:

   i.     Names (including subscriber names, usernames, and screen names);

   ii.    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   iii. Local and long-distance telephone connection records;

   iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.     Length of service (including start date) and types of service utilized;

   vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT ACCOUNT, including:

  i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

  ii. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received); and

  iii. timing advance data (PCMD, RTT, True Call, Timing Advance, LOCDBOR, or equivalent).

b. Information associated with each communication to and from the SUBJECT ACCOUNT for a period of 30 days from the date of this warrant, including:

  i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

  ii. Source and destination telephone numbers;

  iii. Date, time, and duration of communication; and

  iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the SUBJECT PHONE will connect at the beginning and end of each communication.

## II. Information to be Seized by the Government

All information described above in Section I that constitute evidence of violations of Title 18 U.S.C. § 1343, that is, wire fraud, and Title 18 U.S.C. § 371, that is, conspiracy to commit offense against the United States



CLERK'S OFFICE
A TRUE COPY
Oct 27, 2025
S. DUDI
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched <br> or identify the person by name and address)* <br><br> Records and information associated with the cellular device assigned call number (414) 364-0103 (the "SUBJECT ACCOUNT"), whose service provider is AT&T, and whose suspected user is JASPREET SINGH | ) ) ) ) ) ) <br><br> Case No. **25-M-593 (SCD)** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy |
| 18 U.S.C. § 1343 | Wire Fraud |

The application is based on these facts:

Please see Affidavit.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of 30 days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John Modransky, Special Agent, DOT-OIG
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 10-27-25

*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, John Modransky, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned call number (414) 364-0103 ("the SUBJECT ACCOUNT"), with listed subscriber JASPREET SINGH, that is in the custody or control of AT&T Corporation ("AT&T"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, Suite 300 North Palm Beach, FL 33408.  As a provider of wireless communications service, AT&T is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.      The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require AT&T to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  See 18 U.S.C. § 3123(b)(1).

4.     I am Special Agent with the U.S. Department of Transportation (DOT), Office of Inspector General (OIG) and have been employed since August 2019. I am currently assigned to DOT-OIG's Midwestern Region. As part of my job, I am responsible for investigating various federal crimes, including program fraud, identity theft, wire fraud, and fraudulent statements submitted to the government. I attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Academy in Glynco, GA, where I was trained in various law enforcement methods, including physical surveillance, interviewing, computer analysis, and financial analysis. I have also participated in arrest warrants and search warrants of various types of properties. Before joining DOT-OIG, I was employed as an Investigator with the Chicago Public Schools, Office of Inspector General, for approximately four years. The facts set forth in this Affidavit are based on my personal participation in this investigation and from information provided by federal agents, and state partners. I am incorporating my experience, training, and background as a DOT-OIG Special Agent

5.     I have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and therefore does not set forth all of my knowledge about this matter.

7.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that JASPREET SINGH (J. SINGH) orchestrated a conspiracy to

defraud the Wisconsin Division of Motor Vehicles, in violation of the Commercial Motor Vehicle Safety Act of 1978 and Title 18 United States Code, Section 371, and with using an interstate wire to obtain money from false pretenses, in violation of Title 18 U.S.C. § 1343, between June 10, 2024, and December 10, 2024, in Milwaukee County, in the Eastern District of Wisconsin. There is also probable cause to search the information described in Attachment A for the evidence of these crimes further described in Attachment B.

## JURISDICTION

8.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## STATUTORY BACKGROUND OF CRIMES BEING INVESTIGATED

9.      Title 18 U.S.C. § 1343 makes it a federal crime to devise or participate in a scheme to defraud, or obtain money by false pretenses, through the use of interstate wires. Title 18 U.S.C. § 371 makes it a federal crime to knowingly and intentionally conspire to commit an offense against the United States or to defraud the United States.

10.     Additionally, the DOT-OIG is a federal agency of the United States and was created by the Inspectors General Act of 1978. Matters related to commercial driver's license (CDL) and commercial learner's permit (CLP) requirements pertaining to testing and fraud prevention fall under the jurisdiction of the United States pursuant to the Commercial Motor Vehicle Safety Act of 1986, which mandates that states adopt uniform standards for testing and licensing, detailed in 49 Code of Federal Regulations (CFR) Part 383, by the Federal Motor Carrier Safety Administration, along with 49 CFR Part 384, and 49 U.S.C. § 31305.

11.     In Wisconsin, the Wisconsin Department of Transportation (WisDOT) through its Division of Motor Vehicles (DMV) regulates CDLs and CLPs.  WisDOT ensures that CDL and CLP holders meet federal and state requirements for driving commercial vehicles, including medical fitness, knowledge and skills, and compliance with traffic laws. Wisconsin (Wis.) Statute (Stat.) § 343 governs driver licenses, addressing who needs one, the different types, and the rules for obtaining and maintaining them. Section 342.02 of Wis. Stat., governing operator's license, requires that its rules align with and be at least as strict as the standards set by the federal Commercial Motor Vehicle Safety Act (49 U.S.C. 31301 to 31317) and the regulation adopted under that act.  This means Wisconsin regulations for operator's licenses to include commercial motor vehicles (CMV), must follow the definitions and requirements outlined in 49 U.S.C. § 31301 and related federal law.

12.     49 U.S.C. § 31301 establishes definitions for CDLs, CLPs, and CMVs. These include defining a CDL and CLP as a state-issued license permitting the operation of a CMV as a vehicle used in commerce for transporting people and property.

13.     49 U.S.C.§ 31301 sets the fundamental definitions for CDLs, CLPs, and CMVs, and Wis. Stat. § 343 incorporates and must adhere to these federal standards in its management of driver's license regulations to include CMVs.  The issuance of CDLs and CLPs by states is primarily governed by 49 CFR Part 383 and 49 CFR Part 384.

14.     49 CFR Part 383 establishes the federal standards for CDLs and CLPs, including requirements for knowledge and skills tests, license endorsements, and general CDL and CLP requirements. Specifically, 49 CFR 383.23 addresses the CDL and CLP, stating that no person shall operate a CMV without a CDL or CLP meeting federal standards. To comply with Part 383.23, drivers must have passed knowledge and driving tests aligning with federal standards

(subparts F, G, and H of Part 383) for the specific CMV the driver will operate. Subpart F (Vehicle Groups and Endorsements) defines the different classifications of commercial motor vehicles and the endorsements (e.g. hazardous materials, passenger, or school bus) that drivers need, Subpart G (Required Knowledge and Skills) defines the specific knowledge and skills that drivers must demonstrate to obtain a CDL an CLP, Subpart H (Test Standards) outlines the minimum standards that state-administered knowledge and skills tests must meet, and Subpart J (Licensing Procedures) address the procedures for issuing and managing CDLs and CLPs. A driver must possess a valid CDL from their state or jurisdiction of domicile that meets the standards in subpart J of Part 383. Furthermore, the CDL must be issued by the driver's state or jurisdiction of domicile.

15.     49 CFR Part 384 details the requirements for states to achieve and maintain substantial compliance with the federal CDL and CLP program. It covers areas to include CDL and CLP issuance procedures, information management, and data sharing.

16.     49 U.S.C. § 31305 establishes minimum standards for written and driving tests for CMV operators. The tests are required for those operating or intending to operate CMVs in a vehicle representative of the type they will drive. The standards can vary for different CMV classes and must include minimum passing scores. The tests aim to ensure operators understand safe CMV operation regulations and vehicle safety systems.

**PROBABLE CAUSE**

17.     According to a Confidential Human Source (CHS),[1] since approximately 2019, he/she had worked with other conspirators to help numerous paid customers obtain their CDLs

---

[1] According to a law enforcement database, CHS criminal history includes the following: (1) a January 2015 arrest for false swearing (non-criminal) (WI Statue § 946.32) which was dismissed; (2) a March 2015 arrest for possession of child pornography (WI Statue § 948.12) which was also dismissed; and (3) a February 2018 felony conviction for making threats to communicate derogatory information (WI Statue § 943.31). CHS served a sentence of probation for this conviction. CHS has not been compensated for information he/she has provided.

through fraudulent means. According to the CHS, members of the conspiracy including the CHS and J. SINGH, would recruit potential customers or clients who would pay the conspirators a fee to obtain their CDLs through fraudulent means, i.e., without having to study for the knowledge portion of the CDL exam, and without having to demonstrate the necessary skills on the driving portion of the exam. For a fee, the CHS (or others) would help the clients cheat on the knowledge portion of the exam to obtain their CLP.  Then, other members of the conspiracy would help the customers pass the driving portion of the exam without having to demonstrate mastery of the necessary skills. Each member of the conspiracy would receive a portion of the fee paid by the client or customer.

18.    On or about February 15, 2024, law enforcement made contact with the CHS, after which the CHS agreed to assist law enforcement in investigating the conspiracy ring. Even after CHS began working with law enforcement, which was unknown to J. SINGH, J. SINGH continued to make contact with CHS to see if J. SINGH could continue to help clients obtain their CDL's with the assistance of CHS and others.

19.    Special agents with DOT-OIG and the FBI conducted a series of undercover operations in which the CHS would assist clients brought to him/her by J. SINGH by helping them cheat on the knowledge exam. These operations were conducted in conjunction with the Wisconsin Department of Transportation. Once the client passed the knowledge exam by cheating, the Wisconsin DOT would withhold the issuance of the client's CLP under the guise of a clerical error or computer glitch.

20.    As part of the operations, between June 10, 2024, and December 10, 2024, J. SINGH and the CHS engaged in a series of recorded phone conversations discussing clients of J.

SINGH that sought to obtain their CDLs and CLPs through fraudulent means. J. SINGH found and/or recruited the clients who wished to obtain their CDLs through fraudulent means.

21.　　J. SINGH then arranged for these clients to take the knowledge portion of the exam with the CHS's assistance. The CHS's method in helping the clients cheat on their CLP test was to have the clients wear a turban concealing Bluetooth in-ear headphones, which played the test questions through over-ear headphones worn on top of the clients' turbans. The CHS would listen to the questions remotely and provide the clients with the corresponding answers.[2] See picture below.



**Pictured above is one of the clients/customers taking the knowledge portion of the CLP exam.**

22.　　The CHS claimed that WI DMVs allowed assisted listening devices to test takers who had a limited understanding of English. Additionally, J. SINGH told the CHS that he wanted 40% of the payment from all clients that were referred to the CHS.

---

[2] According to the CHS, he/she had knowledge of the answers because he/she had taken and passed the CLP exam.

23.     After passing the knowledge portion of the exam through fraudulent means, J. SINGH would then arrange for the clients to pass the driving portion of the exam as well.  For assisting clients in helping them obtain their CDL through fraudulent means, the clients would pay J. SINGH a fixed fee, which would be shared with other conspirators, including the CHS for his role in assisting with the knowledge portion of the exam. It is unknown precisely how J. SINGH would assist clients in passing the driving portion of the exam to obtain their CDL.

24.     From June 28 through August 9, 2024, DOT-OIG Special Agents, along with FBI agents, conducted four (4) undercover operations in which J. SINGH would bring clients to CHS for the knowledge portion of the exam.  During these operations, J. SINGH recruited and brought four (4) clients to the CHS.  Following each of the four (4) undercover operations, the client paid either the J. SINGH or the CHS. Then, either J. SINGH or the CHS would share the proceeds with the other. For the first operation, J. SINGH collected cash from the client, then used CashApp to send $901 to the CHS in two separate payments on July 3rd and 4th, 2024.  Following the next three operations, J. SINGH and the CHS physically transferred cash proceeds to each other under DOT-OIG surveillance on July 9, 2024, July 17, 2024, and August 9, 2024.

## ARREST WARRANT AND EFFORTS TO LOCATE J. SINGH

25.     On October 16, 2025, law enforcement personnel obtained a signed arrest warrant for J. SINGH from U.S. District Court for the Eastern District of Wisconsin. *See United States v. Jaspreet Singh*, 25-M-542 (SCD).

26.     J. SINGH is a native of the county of India. He has a pending asylum claim in the U.S. In October 2025, U.S. Immigration and Customs Enforcement ("ICE") sent a letter to J. SINGH to appear for an immigration related meeting at the U.S. Citizenship and Immigration Services building in Milwaukee, Wisconsin. On October 16, 2025, J. SINGH did not appear for

his scheduled meeting with ICE. ICE contacted J. SINGH at the SUBJECT ACCOUNT to inquire about J. SINGH's whereabouts; however, there was no answer.

27. On October 16, 2025, law enforcement personnel traveled to an apartment address associated to J. SINGH located at 8900 S. Wood Creek Dr. Apt. 204 Oak Creek, WI 53154. Law enforcement spoke to apartment personnel who confirmed J. SINGH was associated with the 8900 S. Wood Creek Dr. Apt. 204 address, but that "Wildwood Phase 2 LLC." had recently conducted a tenant reference check on J. SINGH. The Wildwood Phase 2 LLC. was an apartment building located close by the 8900 S. Wood Creek Dr. Oak Creek address.

28. On October 16, 2025, Law enforcement personnel traveled to Apartment Homes of Wildwood Preserve Phase II LLC., located at 7926 S. Wildwood Dr. Oak Creek, WI 53154, and spoke with apartment personnel who advised that the SUBJECT ACCOUNT was the mobile number they had on file for J. SINGH.

29. On October 17, 2025, a query of law enforcement databases listed the SUBJECT ACCOUNT to J. SINGH.

30. At this point, law enforcement personnel are attempting to locate J. SINGH. Law enforcement believes J. SINGH has maintained possession of the cellphone associated with the SUBJECT ACCOUNT since he recently communicated with his leasing manager on October 16, 2025, utilizing the SUBJECT ACCOUNT. Law enforcement believes that the data requested herein, regarding the SUBJECT ACCOUNT, may assist in locating J. SINGH.

## Cell-Site Data

31. In my training and experience, I have learned that AT&T is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate

information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

32.     Based on my training and experience, I know that AT&T can collect cell-site data on a prospective basis about the SUBJECT ACCOUNT. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

33.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

34.     Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT ACCOUNT's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

35.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.  The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the SUBJECT ACCOUNT,

without geographic limit, for a period of forty-five days (45) days pursuant to 18 U.S.C. § 3123(c)(1).

36.     I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**ATTACHMENT A**

**Property to Be Searched**

Records and information associated with the cellular device assigned call number (414) 364-0103 (the "SUBJECT ACCOUNT"), whose service provider is AT&T (the "Provider" or "Service Provider"), and whose suspected user is JASPREET SINGH.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A.

a. The following information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period time period January 1, 2025, to the date of this warrant:

i.      Names (including subscriber names, usernames, and screen names);

ii.      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii.      iii. Local and long-distance telephone connection records;

iv.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v.      Length of service (including start date) and types of service utilized;

vi.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.      Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii.      Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.     All records and other information (not including the contents of
communications) relating to wire and electronic communications sent or
received by the SUBJECT ACCOUNT, including:

  i.   the date and time of the communication, the method of the
communication, and the source and destination of the
communication (such as the source and destination telephone
numbers (call detail records), email addresses, and IP
addresses);

  ii.  information regarding the cell tower and antenna face (also
known as "sectors" through which the communications were
sent and received); and

  iii. timing advance data (PCMD, RTT, True Call, Timing Advance,
LOCDBOR, or equivalent).

b.  Information associated with each communication to and from the SUBJECT
ACCOUNT for a period of 30 days from the date of this warrant, including:

  i.   Any unique identifiers associated with the cellular device,
including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

  ii.  Source and destination telephone numbers;

  iii. Date, time, and duration of communication; and

  iv.  All data about the cell towers (i.e. antenna towers covering
specific geographic areas) and sectors (i.e. faces of the towers)
to which the SUBJECT PHONE will connect at the beginning
and end of each communication.

## II.     Information to be Seized by the Government

All information described above in Section I that constitute evidence of violations of
Title 18 U.S.C. § 1343, that is, wire fraud, and Title 18 U.S.C. § 371, that is, conspiracy to
commit offense against the United States